# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | **CASE NO.:   1:11-cr-005** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **CHIEF JUDGE DLOTT** |
| | : | |
| **ANDREW KEITH,** | : | |
| | : | |
| **Defendant.** | : | |

====================================================

## UNITED STATES' SENTENCING MEMORANDUM

Comes now the United States of America, by and through Christy L. Muncy, Assistant

United States Attorney, and respectfully submits the following sentencing memorandum for the

Court's consideration.

Respectfully submitted,

CARTER M. STEWART
United States Attorney

*/s/Christy L. Muncy*
CHRISTY L. MUNCY  (KY 88236)
Assistant United States Attorney
Attorney for Plaintiff
221 E. Fourth Street, Suite 400
Cincinnati, Ohio 45202
(513) 684-3711
christy.muncy@usdoj.gov

**MEMORANDUM**

**STATEMENT OF THE CASE**

On January 19, 2011, the Grand Jury for the Southern District of Ohio returned a one hundred

seventeen count Indictment alleging violations committed by the defendant involving the sexual

exploitation of minors. (R. 3, Indictment).  On May 5, 2011, the defendant appeared before the Hon.

Sandra S. Beckwith and entered pleas of guilty to Counts 1, 4, 10, 13, 16, 17, 21, 34, 42, 60, 62, 105,

111, 112, 114, 116 and 117 of the Indictment pursuant to a Plea Agreement.  (R. 18, Plea

Agreement).  The counts of conviction are identified as follows:

| Count | Date | Description |
|---|---|---|
| 1 - *Production* | 6/28/02 | Keith performing oral sex on a prepubescent male |
| 4 - *Production* | 2/24/03 | Keith performing oral sex on a prepubescent male |
| 10 - *Production* | 2/24/03 | Keith penetrating the anus of Victim 1 with his toe |
| 13 - *Production* | 1/13/03 | Keith fondling the penis of Victim 1 |
| 16 - *Production* | 6/10/02 | Keith exposing the anal and genital area of a prepubescent male |
| 17 - *Production* | 6/21/02 | Victim 1 nude lying on his back with his legs spread |
| 21 - *Production* | 6/23/02 | Victim 1 nude lying on his back exposing his genitals |
| 34 - *Production* | 6/24/02 | Victim 1 partially nude with his legs spread exposing his penis |
| 42 - *Production* | 6/25/02 | Close up of a prepubescent male's penis |
| 60 - *Production* | 6/25/02 | Victim 1 partially nude lying on a bed with his legs in the air, exposing his anus and genital area. |
| 62 - *Production* | 6/27/02 | Victim 1 nude standing in front of a white sheet with his penis exposed |

| 105 - *Production* | 9/17/02 | Victim 1 partially nude lying on his back with his legs spread exposing his penis |
|---|---|---|
| 111 - *Production* | 2/24/03 | Victim 1 standing with one hand holding his shirt with one hand with his penis exposed |
| 112 - *Production* | 1/13/03 | Victim 1 partially nude reclining in a chair with his penis exposed |
| 114 - *Production* | 1/27/03 | Close up of a prepubescent male's penis |
| 116 - *Transportation* | 12/26/08 - 7/1/10 | All of the images contained in the aforementioned counts were transported, among others |
| 117 - *Possession* | 12/26/08 - 7/1/10 | Approximately 2,500 additional images were found which depicted minors less than 12 years of age in various sexually explicit positions |

The probation office was thereafter ordered to complete a Presentence Report (PSR) for the Court's consideration.  The Final PSR was transmitted to the district court on October 19, 2011.  On January 25, 2012, the matter was reassigned to this Honorable Court for the sole purpose of sentencing, which is currently scheduled for May 9, 2012.

### STATEMENT OF FACTS

Investigation into Keith was initiated when a lead was received by the FBI Field Office in Cincinnati from the FBI Field Office in Columbia, South Carolina.  The lead indicated that Keith had been trading child pornography.  A suspect in South Carolina reported he had received images Keith created from a user known as "timmy10."  The date/time stamp on the images were from 2002-2003.  The user known as "timmy10" lives in the Las Vegas, Nevada area.

In a separate investigation, the FBI Field Office in New Haven, Connecticut obtained images from a computer belonging to a subject being investigated for trading child pornography.  The computer was found to contain hundreds of images titled using the name of the child victim.  Review

of these images and associated data confirmed that this series of photographs were taken by Keith and depicted the minor male child being sexually assaulted by Keith, among other images which depicted the child being posed nude.  All of the photographs were sent via a Peer-to-Peer (P2P) file sharing program by Keith.  It was determined the images were traded between December 26, 2008 and July 1, 2010.

During Keith's interview in November 2010, he initially denied any knowledge of child pornography.  However, ultimately he admitted that he had taken photographs of two boys (Victim 1 and Minor 2, approximate ages 6-9 years old).  According to Keith he took the images using his cellular telephone.  Keith admitted he had downloaded the images he took to a computer and traded them using a P2P file sharing program.  Keith further admitted he had performed oral sex on the two male juveniles and had them perform oral sex on him.  Keith indicated he had last accessed his P2P file sharing account sometime between July and September of 2010.  Review of Keith's computer revealed he had used multiple memory storage devices on this computer during the month of October of 2010.  Keith acknowledged he had previously used the screen name "boydrewy" to trade images of child pornography with a user known as "timmy10."  Keith created the screen name "boydrewy" in the P2P file sharing program on March 19, 2008.  The subject using the screen name "timmy10" created that account on December 26, 2008.  The photographs traded by Keith were taken in 2002 and 2003.  Keith maintained these photographs for over six years prior to trading them with "timmy10."

Teresa Bailey[1], Keith's mother, stated during an interview she had operated an in-home

---

[1]Bailey has entered a plea of guilty to Child Endangering charges in Butler County, Ohio and is currently serving a term of imprisonment with the State of Ohio.

daycare from her residence located in West Chester Township, Ohio.  She indicated she provided care for school age as well as infant children, both male and female.  During the interview, Bailey stated she knew Keith had molested the child depicted in the photographs and for that reason she "kept an eye" on him (Keith).

According to the child depicted in the majority of the images (Victim 1), Keith began sexually abusing him almost immediately upon his being cared for by Keith's mother.  This abuse occurred on a near daily basis.  Victim 1 was in the daycare for approximately three years and the abuse continued up until the time he stopped attending the daycare.  Victim 1 indicated that Keith began making threats against him, his sister (then an infant who was also being taken care of in the daycare), and his parents.  As a result, and at Keith's direction, the child alleged he had been sexually abused by a neighbor child (Minor 1) as opposed to Keith.  At the time, Victim 1 was approximately 7 years of age.  Local law enforcement officers initiated an investigation against Minor 1, which remained open until it was discovered Keith was the actual perpetrator.

After it became public knowledge that Keith had been arrested, the parents of numerous other children came forward to advise their children had been cared for by Bailey.  Among them was Victim 2.  The investigation revealed that Victim 2 had been cared for by Bailey at her home when he was approximately 9 years of age.  Victim 2 was interviewed by a forensic interview specialist with the FBI and denied he had been abused or photographed by Keith.  However, unclothed photographs of Victim 2 were discovered in the items seized from Keith.  Specifically, Victim 2 was depicted in images taken on the living room couch in Bailey's home.  The images show Victim 2 lasciviously displaying his genitals, with the assistance of Keith.  Cropped versions of the images were shown to Victim 2's mother who confirmed the child was indeed Victim 2.

Also to come forward was Victim 3, who was approximately 4 years of age when he was cared for by Bailey. Victim 3 indicated that Keith would sexually abuse him after his parents would drop him off. The child indicated, in his own terms, that Keith performed oral sex on him and ejaculated on his face, which the child described as "white goo" which burned his face. Victim 3 stated the abuse took place in Keith's bedroom. Victim 3 did not indicate that Keith took photographs of the abuse.

A search warrant was executed on Keith's residence in January 2011, as well as a storage unit. Among items found were cell phones, computers, zip drives and other similar products. Forensic analysis found Keith still possessed the above referenced photographs taken by himself, in addition to numerous other images of child pornography. Some of the other images possessed by Keith included images of children as young as infants being sexually abused. The total number of images produced and/or possessed by Keith was well in excess of 600. Although Keith admitted to taking child pornographic images of Minor 2, none were found and Minor 2 remains unidentified.

## ARGUMENT

### I.     INTRODUCTION

The parties agreed that an appropriate sentencing range for the Court to consider is a period of incarceration of not less than 30 years and up to Life, with each side free to argue for what it deems to be an appropriate sentence. Given the facts and circumstances relevant to sentencing, this Honorable Court should impose the maximum sentence of the agreed-to range. Andrew Keith has spent his entire adult life sexually abusing or otherwise exploiting children. In some instances, he made a permanent record of the abuse by photographing it. He assured the images would forever remain in the stream of commerce when he traded them with other child pornographers. In doing

this, Keith subjected the victims to a lifetime of fear, resentment and distrust. The children he abused will forever be affected by the horrific acts committed upon them at Keith's hands. Their sentence is lifelong. Keith's sentence should be not a day less.

## II.      SENTENCING CALCULATION

### A.      Statutory Minimum Sentence

For counts 1, 13, 16, 17, 21, 34, 42, 60, 62, 105 and 112, the minimum sentence that may be imposed is imprisonment for not less than 10 years and not more than 20 years; for counts 4, 10, 111, and 114, the minimum sentence that may be imposed is imprisonment for not less than 15 years and not more than 30 years; for count 116, the minimum sentence that may be imposed is imprisonment for not less than 5 years and not more than 20 years; and for count 117, the maximum term of imprisonment is 10 years. Each counts carries a fine not to exceed $250,000.00, a minimum of 5 years and up to Life of supervised release, and a mandatory special assessment of $100.00 per count.

### B.      Sentencing Guidelines Calculation

The parties did not object to the advisory sentencing guidelines range as calculated by the probation department. There are no unresolved objections by either party.

## III.      ANALYSIS OF 18 U.S.C. §3553(a) FACTORS

The sentencing factors support a sentence at the high end of the sentencing range agreed to by the parties. In other words, the defendant should be sentenced to serve the statutory maximum penalty. Keith is not representative of the "typical" child pornographer; *i.e.* one who trades images of child pornography but is not accused of committing a hands-on offense. Keith produced child pornography. He collected it. He traded it. Keith has a long history of sexually abusing children. The maximum sentence agreed to by the parties should be imposed in this case to promote respect

for the law, deter future conduct, reflect the seriousness of the offense and, most importantly, provide the public with protection from future crimes. Such a sentence is sufficient but not greater than necessary to punish the defendant for his conduct, promote respect for the law, address the seriousness of his offenses and would accurately reflect all other sentencing factors.

      **A.**     **The kinds of sentences available, and the sentencing range.**

Probation is not an available sentencing option. Due to the mandatory minimum sentences applicable to Keith's offenses, incarceration is the only option available to the Court. The parties agreed that an appropriate sentencing range was not less than 30 years and up to Life. Based on relevant sentencing factors, this Honorable Court should impose a term of imprisonment at the high end of the range agreed to by the parties, *i.e.* the statutory maximum. By statute, the Court could impose a sentence of up to two hundred and ten years, followed by Lifetime supervised release.

      **B.**     **The nature and circumstances of the offense and the history and characteristics of the defendant.**

The nature and circumstances of Keith's offenses speak largely for themselves. What is currently known to the government is evidence to conclude Keith sexually molested four young boys, all 9 years of age or less. He took hundreds of child pornographic images of some of the victims and used them to barter with other child pornographers. His collection included not only the images he produced, but also hundreds of other images of child pornography, some depicting victims as young as infants.

**VICTIM ONE - (Age 6 when abuse began; Age 9 when abuse ended)**

Keith began sexually abusing Victim 1 soon after he entered Keith's mother's in-home daycare and some form of abuse took place on an almost daily basis. The abuse did not stop

Page 8 of 27

until the child left Keith's home.  Victim 1 was taken to Teresa Bailey's home for care in 2003.  At that time, Ms. Bailey was also entrusted to care for the boy's baby sister, who was less than one year old at the time. Victim 1 was six years old when he entered the day care and was nine years old when his parents stopped taking him there.

Keith began sexually abusing the boy by touching his genitals.  This conduct increased into molestation rather quickly.  Keith would perform oral sex on the child, ejaculate on him, anally penetrate him and use other objects to penetrate the boy.  According to Victim 1, the abuse took place almost daily.  At some point during the abuse, Keith began photographing the boy.  The images recovered thus far are in the hundreds.  However, due to how the images appear to be numbered, the actual number could be more than one thousand.  The images of Victim 1 were taken in Keith's bedroom, which was located in the basement.  The images depict the child, among other poses, standing nude in front of a sheet which is hung from the ceiling and walls.  In other images, the child is on Keith's bed, also nude, in a chair, or on the floor.  In one image, Keith appears to be attempting to insert his toe into the boys anus.  In another, what appears to be semen is on the child's buttocks.

### False Accusation

For reasons that remain unclear, Keith made Victim 1 accuse a neighbor boy (then eleven years old) of sexually assaulting him.  Victim 1 told Bailey the assault had taken place at the other boy's outside play house which was adjacent to Bailey's home.  Bailey passed along the information to the mother of Victim 1 who immediately contacted authorities.  As a result, a criminal investigation was initiated against the accused child, as well as a social services' investigation.  The claims were left unsubstantiated, but the criminal case remained open until Keith's arrest at which time it was revealed the neighbor boy was falsely accused at Keith's direction.

**Threats**

In addition to the sexual abuse and forcing Victim 1 to fabricate a story, Keith also threatened the boy if he told about the abuse he was inflicting upon him. At the time, the boy's baby sister was also being cared for by Bailey. Keith told Victim 1 if he told anyone about the abuse, he would kill his baby sister and harm his mother and father. He also told the boy he would hurt him. For years, Victim 1 says he lived with the fear Keith would hurt him or his family. In fact, Victim 1 initially denied any abuse by Keith when he was first approached by authorities at the end of 2010. It was not until he was assured Keith could not harm him or his family that Victim 1 finally disclosed the years of abuse he was subjected to by Keith.

**<u>The aftermath - Victim 1 and his family</u>**

Until the day Victim 1 phoned his mother to tell her an FBI Special Agent and a Detective with the West Chester Police Department were on their way to speak to her, she was oblivious to the abuse her son had endured at the hands of Keith. She describes that day as the "worst day of [her] life." Before then, she had been under the assumption her child's behaviors were a product of another child hurting him. Upon learning the harm was actually a result of a person who she entrusted to care for him, she was devastated. The feelings of anger, guilt and blame have been relentless.

**<u>VICTIM TWO - (Age 8 at time images were taken)</u>**

The exact extent of the abuse inflicted upon Victim 2 remains unknown. Victim 2, as can be too common, denied any abuse by Keith or that images were taken of him. Victim 2 was interviewed by a forensic interview specialist with the FBI at Children's Mayerson Center. Because

the child did not disclose abuse and due to his young age, he was not shown images which were believed to be him.  The task of identification was left to his mother.

Among the vast amount of child pornography found during the course of two searches, were images of Victim Two.  The boy was eight years old at the time the images were taken.  He is seen lying on the couch in Bailey's home where she offered babysitting services.  The boy is on his back in one image and his shorts are being pulled down by Keith and the boy's penis is exposed.  In another image, the child is on his stomach and his shorts are again being pulled down by Keith and the child's buttocks are exposed.  Victim 2's mother was shown redacted versions of the images and she positively identified her son.

Keith, during his interview with law enforcement authorities, did not disclose he had taken images of Victim 2, although he very clearly did.  Keith likewise did not admit to sexually abusing the child.

### VICTIM THREE - (Approximately 4 years old at time of abuse)

Victim 3 was approximately four years old when he was abused by Keith, he was nine years old when he disclosed the abuse.  The child indicated that Keith would undress himself and the child and Keith would get "on top of [him]."  The child explained that Keith's penis would touch his naked body and Keith would "suck [his] wee wee."  Victim 3 said the abuse happened in Keith's home and during the times his parents would drop him off to be babysat by Bailey.  Victim 3 stated that Keith attempted to persuade the child to perform oral sex on him but the child refused.  Victim 3 stated that sometimes Keith would pee and described it as "watery and white" and "accidentally landed in [his] underwear."  Victim 3 indicated Keith took pictures of him using Keith's cellular telephone.  However, no images of Victim 3 were found during the course of the investigation.

## KEITH TRADES IMAGES

Initially, the investigation into Keith began when a child pornographer in South Carolina advised law enforcement agents he had received images purported to have been produced by Keith. That individual claimed to have traded with another person in Nevada who had received hundreds of images taken by Keith. In a time span of weeks, it was determined that at least three different individuals in three different states on both coasts had received child sex abuse images taken by Keith.

The South Carolina target (SC) informed authorities he had come into possession of Keith's collection of images depicting Victim 1 through another child pornographer who had, likewise, come into possession of the collection. Keith and SC were not directly trading child pornographic images with each other. SC stated that Keith had somehow found out about his having Victim 1's images and was upset with SC because he had obtained his "private collection" without Keith's permission. SC then began an investigation, of sorts, and searched for Keith on the internet. He told authorities that the images were uploaded to a P2P file sharing program by a user using the screen name of "Boydrewy." SC searched who "Boydrewy" might be and found a social network site belonging to Keith that also listed "boydrewy" as an identifier. SC told authorities that "Boydrewy" was Andrew Keith and he was located in the Cincinnati, Ohio area.

In a separate investigation, a target in Connecticut (CT) was found to be in possession of the images Keith took of Victim 1. Keith had labeled the images using the child's first, middle and last names followed by a number. The first number associated with an image was one and the last number was over one thousand. Examination of CT's computer revealed he had received the images from a person using the screen name "Boydrewy." CT admitted to authorities he had chatted with

Keith and it was his understanding, through representations made by Keith, that Keith was the child's care giver.

In a third investigation, a target in Las Vegas, Nevada (NV) admitted he had seen the "Victim 1" (NV used the child's real name) series and had received the images from a person with the first name of Steve and using a screen name of "dutymw2." NV admitted he used the screen name of "timmy10" when using the file sharing program. "dutymw2" remains unidentified at this time, but NV indicated he traded child pornographic images with him.

Since initially discovering Victim 1's images had been traded on the internet, the number of individuals in possession of the images has grown. The government will update the Court with information received from NCMEC at the time of sentencing.

**Keith's child pornography collection.**

Review of items possessed by Keith revealed he did not limit his collection to only images taken by himself. Investigators discovered hundreds of other images of child sexual abuse. Some of these images depicted infants being sexually abused by adult males. A series of images, for example, depict an infant male child (approximately 10-12 months of age) and a naked adult male. The baby is shown with the adult's penis in his hands and mouth. In other images, young boys who appear to be less than ten years of age are depicted in various sexual acts; which include, but is not limited to, lasciviously displaying their genitals, performing oral sex on other children, and engaged in anal sex.

Numerous items were recovered as a result of search warrants, which included computers, zip drives, hard drives, and cellular telephones. Pornographic images as described above were found on at least four separate items. One of the zip drives belonging to Keith was found to contain the

images of Victim 1 which were taken in 2002-2003.  The Compaq computer was found to contain over 1,200 images of child pornography.  The remaining portion of Keith's child pornography was found on the other media items seized.  These items were sadistic or otherwise violent.  Keith's collection is indicative of a person whose appetite for child pornography and sexual abuse of children is uncontrollable.

### Keith's personal history.

According to the PSR and the evaluation conducted of Keith, he was abused as a child by other children slightly older than him.  The probation officer was aware of these allegations as well as the part they played in shaping Keith as an adult, but nonetheless recommends a sentence of 80 years imprisonment.  If true, the allegations are tragic.  But, it can hardly be offered as an explanation for Keith's conduct as an adult.  Keith does not allege his abuse involved production of child pornography.  Keith does not allege his abuse involved the transportation of child pornography.  Keith does not allege his abuse involved the trading of child pornography.  Therefore, these instances can hardly be considered to be sexual abuse similar to the sexual abuse the defendant inflicted upon the victims in this matter or the abuse they will continue to suffer for the remainder of their life every time their images are discovered in another collection.

### Claims made by Keith.

Keith has made numerous astounding allegations in filings with the Court.  However, all of the allegations are either unsubstantiated or completely false.  First, Keith's father, Randy, did not grow up in a "home plagued by sexual abuse."  Quite the contrary.  According to Randy Keith, the relationship he had with his parents was a good one.  His father, the defendant's grandfather, passed

away when Keith was approximately one week old. Randy Keith denied ever being physically or sexually abused by his parents. He described the allegations made by Teresa Bailey as a "new low."

As for the accusation that Randy Keith was schizophrenic, bipolar and an alcoholic, these allegations were likewise denied. Randy Keith denied ever being treated or diagnosed with schizophrenia or bipolar disorder, and while he admits to drinking socially, he is not an alcoholic. This information was confirmed by his wife, Rebecca Keith, both of whom have worked for the United States Postal Service for approximately two decades. In addition, John Keith and Mrs. Keith's other children, indicate that Randy Keith was not abusive toward the children in any way and did not abuse alcohol. Randy, Rebecca and John Keith indicate the children were supervised during childhood visitations.

The allegations that Keith was sexually abused as a child have evolved over the years. What began as an allegation of fondling by a step sibling during a bath at the age of five (March 1989) ends with allegations of incest between his biological father and maternal grandmother (December 2011). Whether or not Keith was abused as a child by other children remains a mystery to the government. Regardless, whatever he may have "suffered" as a child, if anything, does not negate his behavior as an adult. Being bathed as a child does not excuse or explain sexual molestation of a four, five, six, seven, eight, or nine year old as an adult. Allegedly being sexually abused by step brothers does not excuse or explain producing hundreds of images of child pornography as an adult. Allegedly being the child of a parent who suffers mental disorders does not excuse or explain trading hundreds of images of child pornography as an adult.

For as much weight as the Court wishes to give such allegations, it cannot go without saying that none of the allegations made by Keith or his mother have been substantiated. Indeed, on two

separate occasions, the Hamilton County Department of Human Services found the allegations made by Keith's mother to be unsubstantiated. In a letter directed to the Butler County Children's Service from the Hamilton County Department of Human Services, the social worker indicated it would be "recommended to our agency that if Teresa Hall makes a referral again ... not to accept the referral since these same allegations have twice been investigated."

The claims made by Keith and his mother have become increasingly more outrageous and, as a result, increasingly less believable. Ms. Bailey's eldest son characterized her as a "pathological liar." Regardless of the accuracy of the allegations, or lack thereof, they do not mitigate Keith's conduct.

In a recent opinion by the Sixth Circuit, albeit unpublished, the Court found that a district court's imposition of a 30 year term of imprisonment for receipt, distribution and possession of child pornography was reasonable. *United States v. Dattilio*, 2011 WL 4485165, (6th Cir.); *cert denied,* – S.Ct. –, 2011 WL 5024643, Nov. 28, 2011. One of the arguments on appeal was that the district court had failed to consider Dattilio's character and background. The Sixth Circuit disagreed. The court noted the district court considered Dattilio's "personal characteristics at length, discussing his familial relationships, physical health, education and work history, and his willingness to seek counseling to deal with mental and emotional issues." *Id.* at 4. There was nothing in Dattilio's personal history that caused the district court to impose a sentence below the guidelines, a decision affirmed by the Sixth Circuit. Unlike Dattilio, Keith's offenses were not limited to the receipt, distribution and possession of child pornography.

Nearly all of Keith's personal characteristics and history support a sentence at the high end of the range agreed to by the parties. As detailed above, the defendant has spent his entire adult life

sexually abusing children.  These children were brought to Keith's mother's home to be cared for while their parents worked.  They were supposed to be protected.  Instead, they were subjected to sexual abuse and a lifetime of nightmares.

Keith's sexual abuse of children was not an isolated incident. He spent years abusing various children, less than 10 years old.  His actions were not mistakes.  They were deliberate, persistent and manipulative. He used threats against a child and his family.  He minimized his conduct when confronted.  He misled investigators.  He laid hands upon children in a way no child should ever endure.  His actions are horrendous.  They are unforgivable, not to mention unforgettable.  A sentence which is the equivalent to his actions is warranted and such a sentence is ***well*** in excess of 30 years incarceration.

**C.**      **The need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and provide the defendant with needed educational, medical, and correctional treatment.**

In order to adequately address the seriousness of Keith's offense, this Court must impose a significant term of imprisonment.  All of these sentencing factors supports a sentence at the high end of the range agreed to by the parties.  The images taken by Keith graphically document only a fraction of the abuse he inflicted upon children. These children were as young as four years old.

The Sixth Circuit affirmed a district court's imposition of a lengthy term of imprisonment for a defendant whose victims were limited to only two and wherein the images depicted lascivious exhibition of the victims genitals, not actual sexual or physical contact.  In *United States v. Brown*, 579 F.3d 672, 686-87 (6th Cir. 2009), the defendant argued for a sentence below the applicable guideline range because he only had a 9th grade education, had been evaluated to be borderline

mentally retarded, was himself abused as a child and had never been accused of or convicted of having improper sexual contact with a minor.

Here, Keith clearly engaged in more than simply posing a child for the purpose of taking lascivious images of their genitals. Keith is seen performing oral sex on Victim 1, touching the child's genitals and anus. It is clear from the images that Keith engaged in anal penetration of the child. The fact Keith has not been convicted of a prior sex offense against a child is of little significance. Had his actions been detected when they began, he *would be* a convicted sex offender. His criminal conduct began in 2002 and continued up until the day he was arrested in 2010.

As evidenced by the report submitted on Keith's behalf, he is in need of "intensive treatment to address the dynamics of his sexual acting out." Psych Eval p. 10. All of his medical needs can be addressed by the Bureau of Prisons. While in prison, he would benefit from sex offender treatment as well as treatment for his other issues. The doctor noted Keith's dependent personality pattern has extended into adulthood. Keith tended to focus on his separation from his mother and the feelings of guilt associated with his "inability to care for her" while incarcerated when discussing his current distress. While the doctor did note Keith "expressed regret for his actions" involving the children in this matter, Keith's primary concern remained his mother. Clearly, Keith has significant mental health issues which would require intensive and prolonged treatment.

### D. To afford adequate deterrence to criminal conduct and protection of the public from further crimes of the defendant.

A lenient sentence would have little deterrent affect on criminal conduct. Child sexual exploitation cases demand significant sentences. Otherwise, children are put in danger. There is a compelling interest in prosecuting and punishing offenders that sexually exploit children. *New York*

*v. Ferber*, 458 U.S. 747, 761 (1982). Leniency is not called for when defendant's, like Keith, prey upon children, trade images of sexual abuse as if they were baseball cards, and threaten physical harm.

Analysis of the evaluation submitted on Keith's behalf supports there is a significant need to protect the public from further crimes of the defendant. The doctor noted the presence of four extremely troubling mental heath conditions related to Keith: dependent personality pattern; obsessive compulsive disorder; pedophilia (nonexclusive); and sexual preoccupation. Independent of one another, they are extraordinarily troubling. Taken together, however, they present the Court with a person who is a time bomb waiting to explode. None of the disorders Keith is noted to have are curable. They will require constant and in-depth treatment. Keith simply is not equipped to self regulate. The only way to adequately protect the public from further crimes of Keith is to incarcerate him.

In the present case, all of the sentencing factors support a sentence at the high end of the range agreed to by the parties. The doctor noted Keith is "amenable to sexual offender treatment." (Psychological Treatment Assessment Report, page 11.) The government cannot disagree. However well intentioned the report may be, it is little more than a road map for protecting the public from Keith. It is clear from the report Keith will have to undergo lifelong treatment to address his many issues. All problems, for that matter, can be well addressed by the Bureau of Prisons.

Keith's reliance on several Sixth Circuit decisions are misplaced. For instance, none of the Sixth Circuits' decisions in *Cherry*, *Grossman*, and *Stall* dealt with production of child pornography offenses. In *Cherry*, the defendant was sentenced to a term of imprisonment of 120 months following convictions for distribution, receipt and possession of child pornography. *United States*

*v. Cherry*, 487 F.3d 366 (6th Cir. 2007). The Sixth Circuit found this below guideline sentence to be reasonable. The sentencing range established by the district court was 210 to 262 months of imprisonment. *Id.* at 368. Two therapists testified on behalf of the defendant in *Cherry*, one of whom testified the defendant was not a pedophile. *Id.* The same cannot be said for Keith, who very much fits the diagnosis of pedophilia. The district court also noted *Cherry*'s "self-knowledge" of his actions and his low risk for re-offending. *Id.* at 369. Again, the same cannot be said for Keith. To the government's knowledge, Keith has not taken any steps on his own behalf to treat his sexual attraction to children or his child pornography trading behavior. Further, it appears from his conduct, he does present a very serious risk of re-offending, especially if left untreated.

In *Grossman*, the Sixth Circuit affirmed a district court's imposition a 66 month term of imprisonment following conviction for possession of child pornography. *United States v. Grossman*, 513 F.3d 592 (6th Cir. 2008). Again, the facts of that case are distinguishable from the case at bar. The defendant in *Grossman* pleaded guilty to a single count of possession of child pornography, with the advisory guideline range established to be 135-168 months. *Id.* at 594. Here, Keith entered a plea of guilty to numerous counts of **production** of child pornography, in addition to transportation and possession of child pornography. Keith's conduct supports a sentence at the high end of the range agreed to by the parties.

Keith also turns to the Sixth Circuit split decision in *United States v. Stall*, 581 F.3d 276 (6th Cir. 2009) in support of his argument for a lenient sentence. Again, the holding in *Stall* does not support such a request. *Stall* entered a plea of guilty to two counts of possession of child pornography and sentenced to one day incarceration followed by 10 years of supervised release. The Sixth Circuit found this sentence to be reasonable based, in part, on the district court's consideration

that *Stall* had not "distributed chid pornography or had improper contact with actual children." *Id.* at 280-81.  Once again, the same cannot be said for Keith.  In the instant case, Keith not only distributed child pornography, he actually introduced child pornography into interstate commerce which had not otherwise been made available.  In addition, the record is clear and Keith does not dispute that he has sexually abused multiple children.  The holding in *Stall* is completely irrelevant to Keith's offense.  This Honorable Court, having been the sentencing court in *Stall*, is well aware the defendant in *Stall* was found to be in violation of the terms of his supervised release when he was found to be accessing child pornography while under supervision.  As a result, he was ordered to serve a term of imprisonment of 60 months.  (Case No. 1:07-cr-106, R. 62, Judgment for Revocation of Supervised Release.)

Keith also cites *United States v. Dorvee*, 616 F.3d 174 (2nd Cir. 2010) which suggests that downward variances in § 2G2.2 guideline cases are warranted, based on Congress' input in establishing those guidelines.  However, the guidelines applicable to Keith's sentence are the §2G2.1 guidelines which were not at issue in *Dorvee*. The Sixth Circuit has obligated this Court to not summarily dismiss the findings and directives of Congress.  In *United States v. Kirchhof*, 505 F.3d 409, 414 (6th Cir. 2007), the defendant argued the child pornography guidelines "no longer reflect the expertise of the Sentencing Commission; and they have been distorted by congressional meddling."  The Sixth Circuit was not convinced, stating the defendant "fails to recognize that it is the prerogative of Congress to fix the sentence for a federal crime and the scope of judicial discretion with respect to a sentence ... it is not the court's role to second-guess the legislative determination of appropriate sentences made by Congress."  *Kirchhof*, 505 F. 3d at 414.

Finally, Keith cites an unpublished Sixth Circuit opinion which affirmed a 30 year sentence for two counts of production of child pornography. In *United States v. Taylor*, 2011 WL 6118486, Dec. 8, 2011, (6th Cir.), the Court found that a thirty year sentence for two counts of production of child pornography and one count of possession of child pornography was not unreasonable. The defendant in *Taylor* distributed two images of himself and his four year old son. *Taylor* at 1. The district court calculated the advisory guideline range to be offense level 41 with an advisory guideline range of 324-405 months. *Id.* Taking into consideration various sentencing factors, the district court sentenced Taylor to 360 months imprisonment followed by lifetime supervised release. *Id.* at 2. The district court noted a similarly situated defendant pending sentencing before the same judge was set to be sentenced to thirty years imprisonment. *Id.* The district court noted in the interest of "fairness," it could not impose a more harsh or a more lenient sentence on the defendant in *Taylor*. *Id.* The Sixth Circuit noted the district court was correct in comparing such cases under 18 U.S.C. §3553(a). *Id.* at 3.

Andrew Keith presents an undeniable danger to society. The only way to adequately address his past actions and protect against further crimes is to imprison him for what would amount to the remainder of his life. He very clearly needs extensive and constant supervision, for which the Bureau of Prisons is adequately equipped.

### E.    The need to avoid unwarranted sentencing disparities among defendants.

The most recent defendant to face punishment for production of child pornography in this division of the District Court was defendant Kenneth Rose. In the case of *U.S. v. Rose* (Case No. 1:09-CR-047), the defendant entered a plea of guilty to three counts of production of child pornography. There was no evidence to support (or even suggest) Rose had distributed the images

he took. The images he took, which were less than 50 images, were found on a non-functioning computer that had not been used in years prior to its discovery. The images were found in deleted space, meaning Rose had thought he had destroyed the images. Rose's advisory guidelines were calculated using the 2003 Sentencing Guideline Manual and resulted in an offense level of 43 (360-Life). District Court Judge Michael R. Barrett imposed a term of imprisonment of 51 years upon Rose, followed by Lifetime supervised release.

Here, Keith's actions are much more expansive. First, unlike Rose, Keith distributed the images he took of Victim 1. At the time he was arrested, the images were known to be in the collections of at least four other child pornographers. Second, Keith took hundreds, if not thousands of images of Victim 1. He also either admitted to taking other child pornographic images of other children or was accused of taking similar images. To date, the discovery of images of only one other child has been revealed. Third, Keith did not delete his collection. In fact, he kept the images for years before he began trading them.

There have been other defendant's to be sentenced for producing child pornography in this district, and this division to be specific. However, the facts and circumstances of their offenses are far different from Keith (and Rose). Keith had multiple victims and abused them over a range of years. He was persistent in his pursuit of them. Rose was similar. However, Rose did not ensure his victims would continue to be victimized for the rest of their lives by posting and trading their images. Keith did. Keith also threatened physical harm to the victim, his sister and his family if he told about Keith's abuse. Rose did not make similar threats. Imposing a sentence that would be less severe than Rose and other similarly situated defendant's would *create* a sentencing disparity, not avoid one. Imposing a sentence at the high end agreed to by the partied would take into account

appropriate sentencing factors and would *not create* sentencing disparities among similarly situated defendants.

## IV.    VICTIM IMPACT

Pursuant to 18 U.S.C. §3771(a) a crime victim has, among other rights, the right to be "reasonably heard at ... sentencing ..." and "to be treated with fairness and ... respect."  With that in mind, it is important for this Honorable Court to be made aware of the impact Keith's actions have had upon his many victims, including the ones he did not commit hands-on offenses against.

First, there are the "real life" victims who are expected to be present in Court at the time of sentencing, along with their families.  These are the young boys whose lives have been forever changed, in a horrible way, by Andrew Keith.  Second, there are the "nameless" victims.  Those are the victims who will be identified by a series name, a name chosen by an employee of the National Center for Missing and Exploited Children (NCMEC), arbitrarily selected based on some feature of an image or video.  In addition to the hundreds of images actually produced by Keith, he also possessed approximately 2,500 additional images of child pornography.  Contained among them were 55 known image files from 21 different series.  They are identified as follows:

> Amy&Bro (France)
> Blue Shirt Girl (France)
> D-Daddy (USA - Texas)
> Dalmations (USA - Multiple Jurisdictions)
> Erik (USA - Washington)
> Freund (Germany)
> Glenn (USA - Texas)
> Hantzel (Austria)
> Hotel_00 (Spain)
> J&N (USA - Texas)
> Jacob&K@tie (Canada)
> KDV (Russia)
> KovTod (Spain)

Pino (Germany)
Privat Shots (Brazil)
Sabban (Brazil)
SpaceStation (USA - Texas)
SpongeB (USA - Utah)
Stein (Germany)
Wild Rider (Australia)
theboyz (USA - Illinois)

Because of Keith, Victim 1 will forever be archived in this database maintained by NCMEC and be referred to as the "RedMouse" series. That is a chilling thought. And, because of Keith, it is a sickening reality. That boy, now a young man who is known by name to this Court, and who intends to address the Court at sentencing, will hereafter be known by every other judge to weigh in upon the crimes committed against him by Keith as ... "RedMouse."

Only 3 victims chose to submit victim impact statements. Among them was the adoptive mother of three young boys who were sexually abused by their foster father. At the time of their abuse, the boys were 6 and 4 (the four year olds are twins). That mother articulated the impact of the production and distribution of child pornography far better than the undersigned could ever imagine when she wrote:

> "In days gone by, photographs such as these would be destroyed - burned into ash. My children's memories of the horrors visited upon them could dim over time and healing could truly take place. With people such as this defendant, actively seeking, purchasing, collecting, trading, and gratifying themselves with these horrific depictions of child rage, memories of these events are kept alive and nourished by this vile sickness of human spirit. A victimless crime? Hardly. People may think that the only victim of child pornography is the child himself and that the viewing of the pornography is remote in time, distance and proximity from the child rapes themselves. My entire family is a victim of this child pornography. Our children are certainly impacted by the knowledge that other people are enjoying themselves with pictures of our children's rape and torment. We are likewise stressed to no end with helpless fury at the thought of what these people are doing with these photographs of our kids. Every time our family learns of another case our hearts sink once more. Will the torment ever end?"

Unfortunately, the answer to this mother's question is no.  The pain will never end.  The memory will always be there.  The scar is forever.  Keith not only inflicted pain upon the children he himself sexually assaulted.  He inflicted pain upon the above family and the 20 other families who have children in identified series.  And, because of him, the torment will never end for the family of Victim 1, Victim 2, Victim 3 or any other victim who remains unknown, such as Minor 2.

## CONCLUSION

Keith's offenses demand a sentence at the high end of the agreed to range; that is, the statutory maximum.  Such a sentence would take into consideration all of the appropriate sentencing factors.  Keith's criminal conduct is expansive and has detrimentally affected many lives.  His punishment should reflect the destruction he has caused.  It should ensure he will never again be in a position to harm another child.  For these reasons and those stated above, the United States respectfully recommends that the Court sentence Keith to the maximum sentence agreed to by the parties.

Respectfully submitted,

CARTER M. STEWART
United States Attorney

/s/*Christy L. Muncy*
CHRISTY L. MUNCY   (KY 88236)
Assistant United States Attorney
Attorney for Plaintiff
221 E. Fourth Street, Suite 400
Cincinnati, Ohio 45202
(513) 684-3711
christy.muncy@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing *United States' Sentencing Memorandum* was served, via ECF, upon counsel for defendant on this the 30th day of March, 2012.

/s/*Christy L. Muncy*
CHRISTY L. MUNCY  (KY 88236)
Assistant United States Attorney