UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Case No. 1:11CR005 |
| vs. | : | Chief Judge Dlott |
| ANDREW KEITH, | : | |
| Defendant. | : | |

### MOTION TO EXCLUDE WITNESS TESTIMONY

Now comes the Defendant, ANDREW KEITH, by and through counsel, and hereby moves the Court to enter an Order excluding the testimony of two government jail house informant/witnesses in this matter based on violations of the Sixth Amendment to the United States Constitution. The grounds for this motion are contained in the attached memorandum in support.

**I. Factual Background**

On January 19, 2011, Mr. Keith was indicted in the present case. Undersigned counsel was appointed to represent Mr. Keith on January 20, 2011, and has represented Mr. Keith throughout the proceedings. On May 9, 2011, Mr. Keith pled guilty before Senior Judge Beckwith to 17 counts involving production, distribution, and possession of child pornography. Since that date, the case has been pending sentencing. The presentence disclosure process was delayed for several months due to the complexity of the case and the pendency of the psychological assessment of Mr. Keith that was performed by Dr. Stuart Bassman. As a result, the sentencing was first scheduled for January 24, 2012.

Due to circumstances that are now under seal, Senior Judge Beckwith entered a recusal in this matter on January 23, 2012, and the case was reassigned to this Court. (R. 39 and 40). After

a conference with the Court on January 27, 2012, a new sentencing date was scheduled for May 9, 2012, with an evidentiary hearing set for April 10, 2012. The evidentiary hearing was continued to April 26, 2012.

### A. The first jail house informant - Alan Gjerde

Mr. Gjerde is a criminal defendant who has pled guilty to traveling across state lines to have sex with a 14 year old, and is awaiting sentencing before Judge Barrett. Mr. Gjerde was housed at the Butler County Jail during the pendency of his case. Mr. Keith was housed at the same facility during this time period. The facts presented to the Court demonstrate that in early February, sometime shortly after Senior Judge Beckwith's recusal in Mr. Keith's case, Mr. Gjerde met with the prosecutor for the purpose of providing cooperation in return for a potential sentence reduction in the jail term he was facing. At that time, the cooperation did not relate to Mr. Keith, but instead another inmate from the Butler County Jail. At the end of the interview, however, Mr. Gjerde was asked by the prosecutor if he had spoken with Mr. Keith at the jail and whether he had any information to provide about Mr. Keith as part of his cooperation. Mr. Gjerde advised that he had only spoken to Mr. Keith generally, but did not have any specifics about Mr. Keith or his case. The prosecutor then made a request of Mr. Gjerde. The substance of this request was a matter of some dispute during the evidentiary hearing before this Court.

Mr. Gjerde first testified on cross examination that the prosecutor asked him to speak to Mr. Keith and report back if any useful information was obtained. At a sidebar with the Court, however, the prosecutor indicated that she had not asked Mr. Gjerde specifically to speak to Mr. Keith, but instead that she had asked Mr. Gjerde to keep his ears open, and that if Mr. Keith said anything incriminating to let the government know. The Court permitted the prosecutor to attempt to

rehabilitate the witness during redirect examination, and he agreed that the prosecutor only asked him to keep his ears open and report back. On recross, Mr. Gjerde again stated that the prosecutor asked him to speak with Mr. Keith and report back. However, on redirect, he again agreed with the prosecutor that she had instead asked him to keep his ears open.

Whichever version of the story is the truth, Mr. Gjerde claimed that he subsequently went back to the Butler County Jail and spoke to Mr. Keith. As a result of this alleged conversation or conversations, Mr. Gjerde had a follow up meeting with the prosecutor wherein he shared the intelligence he had purportedly obtained from Mr. Keith. Mr. Gjerde testified to this information at the evidentiary hearing before this Court on April 26, 2012.

### B. The second jail house informant - Timothy Schantz

In the prosecutor's follow up meeting with Mr. Gjerde, he also alleged that he had spoken with another inmate at the Butler County Jail, Timothy Schantz. According to Mr. Gjerde, he and Mr. Schantz both spoke to Mr. Keith and then "compared notes" about the conversations. Mr. Gjerde told the prosecutor that Mr. Schantz also allegedly had information to provide related to Mr. Keith.

As a result of this meeting with Mr. Gjerde, the prosecutor and the federal agents on the case sought out Mr. Schantz, who was then in the custody of the Bureau of Prisons. The government now purports to put Mr. Schantz on the witness stand against Mr. Keith at the sentencing hearing scheduled for May 9, 2012.[1]

---

[1] Mr. Schantz was represented by the Federal Public Defender's Office in his underlying child pornography case. The government did not notify undersigned counsel of this potential conflict of interest until a few days before the originally scheduled evidentiary hearing in Mr. Keith's case, and at that time it was only disclosed because of the planned video conference of Mr. Schantz from a B.O.P. facility. The government had already obtained separate appointed CJA counsel for Mr. Schantz from Judge Barrett, without informing the Federal Public Defender's Office of the situation.

3

## II. Argument

The use of Mr. Gjerde by the prosecutor to attempt to elicit information from Mr. Keith, who was represented by undersigned counsel throughout, was a clear violation of the Sixth Amendment right to counsel. This is true regardless of which version of events the Court determines to be true regarding Mr. Gjerde's meeting with the prosecutor. As such, the statements allegedly made by Mr. Keith to Mr. Gjerde should be excluded by the Court.

Additionally, all of the fruits of the Sixth Amendment violation must be excluded. The government obtained Mr. Schantz as a witness against Mr. Keith only because of its violation of Mr. Keith's Sixth Amendment rights related to Mr. Gjerde. As such, the proposed testimony of Mr. Schantz must be excluded as the tainted fruit of the Sixth Amendment violation. Each issue is addressed in turn below.

### A. The prosecutor's use of Mr. Gjerde as a government informant violated the Sixth Amendment

A defendant's Sixth Amendment right to counsel attaches "once the adversary judicial process has been initiated," and it guarantees that a defendant has "the right to have counsel present at all critical stages of the criminal proceedings." Montejo. v Louisiana, 556 U.S. 778, 786 (2009). Interrogation by law enforcement officials qualifies as such a critical stage in the proceedings. Id. Under this standard, federal agents may not "deliberately elicit" incriminating information from a defendant "after he has been indicted and in the absence of his counsel." Massiah v. United States, 377 U.S. 201, 206 (1964). "This rule applies where the government recruits an undercover jailhouse informant, or otherwise 'intentionally creat[es] a situation likely to induce [a defendant] to make incriminating statements without the assistance of counsel.'" Brooks v. Tennessee, 626 F.3d 878

(6th Cir. 2010)(quoting United States v. Henry, 447 U.S. 264, 269, 274 (1980)).

In the present case, the prosecutor, after indictment, after appointment of counsel, and after the guilty plea, intentionally utilized a jailhouse informant to obtain alleged incriminating evidence from Mr. Keith, in direct violation of his Sixth Amendment right to counsel. This Sixth Amendment violation led to the testimony of Mr. Gjerde (and ultimately the proposed testimony of Mr. Schantz). Based upon the clear Sixth Amendment violation, all such evidence obtained is subject to exclusion.

Both the United States Supreme Court and the Sixth Circuit have found Sixth Amendment violations based on governmental conduct that is nearly identical to the circumstances of Mr. Keith's case. First, in United States v. Henry, 447 U.S. 264 (1980), the government utilized a paid jail house informant in relation to a defendant charged with an armed robbery. Prior to speaking with the defendant, the informant met with a government agent who told him to be "alert" to any statements made by the defendant, and to "pay attention" if the defendant spoke about his case. Id. at 268. The agent specifically instructed the informant "not to question" the defendant, and "not to initiate any conversations" with him. Id. The informant subsequently obtained information from the defendant at the jail, and provided this information to the government.

The Supreme Court ruled that the government violated the defendant's Sixth Amendment right to counsel. Id. at 274-75. The Court found that the government had created a situation that was "likely to induce [the defendant] to make incriminating statements without the assistance of counsel." Id. at 274. The Court emphasized that, even if the agent did not "intend that [the informant] would take affirmative steps to secure incriminating information, . . . he must have known that such propinquity likely would lead to that result." Id. at 271.

Likewise, the Sixth Circuit reached the same conclusion in Ayers v. Hudson, 623 F.3d 301

5

(6th Cir. 2010). In Ayers, the defendant was charged with a brutal murder and he was housed with an inmate who claimed that the defendant spoke with him about the murder. The inmate contacted police officers who interviewed him about the statements that the defendant made in the jail. Id. at 305. After taking the inmate's statement, the officers informed him that the prosecutor would likely contact him about the case and they sent him back into the jail cell with the defendant. Id. The officers noted in their report that the informant's story lacked detail about the murder weapon and the amount of money stolen during the murder. Id. Within an hour of meeting with the officers, the inmate claimed that the defendant told him about the murder weapon and the sum of money stolen, which the inmate then communicated to the officers the next day. Id. The inmate was, at that time, placed in protective custody. Id.

After defendant's conviction, he filed a federal *habeas* petition alleging a violation of his Sixth Amendment rights. The Sixth Circuit determined that the returning of the inmate back into the cell with the defendant after questioning him about the defendant created a "situation likely to induce [the defendant] to make incriminating statements without the assistance of counsel." Id. at 310. Accordingly, the court found that the government had violated the defendant's Sixth Amendment rights:

> Here, the "combination of circumstances is sufficient to support the . . . determination" that the State intentionally created a situation likely to violate [the defendant's] Sixth Amendment rights when it returned [the inmate] to [the defendant's] jail pod and he thereafter deliberately elicited statements from [the defendant] regarding the murder weapon and the amount of money allegedly taken from Brown's apartment. . . . [The inmate] clearly had the motive and opportunity to gain incriminating statements from [the defendant] and showed from his actions prior to meeting with [the officers] that he was capable of doing so. Moreover, [the inmate] consented to cooperate with the State, as evidenced by his indication to the detectives that he would be willing to serve as a State witness at [the defendant's] trial. These facts, coupled with the State's failure to place [the inmate] in protective

>custody until *after* he secured these additional statements, supports the conclusion that [the inmate] and the State were working in conjunction with each other.

Id. at 315-16 (quoting Henry, 447 U.S. at 271)(emphasis in original). Because the case was appealed from a *habeas* petition, the Sixth Circuit made the additional finding that, by failing to suppress the inmate's testimony, the state courts had made an "unreasonable application of clearly established constitutional law as determined by the Supreme Court." Id.

Mr. Keith's case presents no meaningful distinction from the situations presented in Henry and Ayers. Regardless of which story is to be believed from Mr. Gjerde, the prosecutor indisputably violated Mr. Keith's Sixth Amendment right to counsel. Even if the Court credits the version that the prosecutor asked Mr. Gjerde about Mr. Keith and then told him to keep his ears open if Mr. Keith said anything, this was nonetheless a patent violation of Mr. Keith's rights.

There is no doubt but that Mr. Gjerde was operating as a government informant. He met with the prosecutor directly for the purpose of trying to obtain a sentence reduction in his pending sentencing involving the same prosecutor. He first provided information about a different inmate, and then was asked directly by the prosecutor about Mr. Keith. This question from the prosecutor to Mr. Gjerde came at a time that (1) Mr. Keith was represented by counsel, (2) he had already pled guilty pursuant to a plea agreement, (3) he was awaiting sentencing, and (4) the original sentencing was continued because the first district judge had just recently been required to recuse herself. Mr. Gjerde responded that he had only talked to Mr. Keith generally, but had gotten no specifics. The prosecutor then either asked him to go talk to Mr. Keith (version 1), or told him to keep his ears open if Mr. Keith said anything (version 2). Mr. Gjerde subsequently allegedly spoke to Mr. Keith and reported back to the government with the claimed incriminating statements that the government is

attempting to use in aggravation of Mr. Keith's sentence.

Either version of this story presents a more compelling argument for a Sixth Amendment violation than the facts of <u>Henry</u> or <u>Ayers</u>. Accordingly, the prosecutor's actions in this case constitute a direct violation of Mr. Keith's Sixth Amendment rights under long standing and clearly established Supreme Court and Sixth Circuit precedent. As such, Mr. Gjerde's testimony should be excluded.

**B. The prosecutor's proposed use of Mr. Schantz will violate the Sixth Amendment**

The Supreme Court has long held that the exclusionary rule for unlawfully obtained evidence applies to evidence that is the indirect product, or "fruit"of the constitutional violation. <u>Wong Sun v. United States</u>, 371 U.S. 471, 487-88 (1963). Although <u>Wong Sun</u> dealt with the fruit of a Fourth Amendment violation, the Supreme Court has since held that the "fruits" doctrine applies in the context of a Sixth Amendment violation. <u>Nix v. Williams</u>, 467 U.S. 431, 442 (1984)(citing <u>United States v. Wade</u>, 388 U.S. 218 (1967)).

Since <u>Nix</u>, courts have repeatedly held that the "fruits" doctrine applies in the context of Sixth Amendment violations. <u>United States v. Kimball</u>, 884 F.2d 1274 (9th Cir. 1989); <u>United States v. Stiles</u>, No. 2:07CR0254, 2009 WL 1046123 (D. Nev. 2009); <u>United States v. Ghailani</u>, 743 F. Supp. 2d 242 (S.D. New York 2010). The facts presented in <u>Kimball</u> are similar to the circumstances in the present case. In <u>Kimball</u>, undercover agents met with Daniels, an individual who was involved with the defendant in drug trafficking. At Daniels' suggestion, the agents met with the defendant, who was in jail at the time facing federal charges and represented by counsel. <u>Kimball</u>, 884 F.2d at 1276-77. After eliciting incriminating statements from the defendant, the government continued to work with Daniels and obtained additional incriminating evidence to use

8

against the defendant at trial. Id.

The court in Kimball held first that the undercover agents violated the defendant's Sixth Amendment rights by interviewing the defendant in jail, while charges were pending, and while he was represented by counsel. Id. at 1278. More importantly, the court held that all of the evidence the government obtained from Daniels after violating the defendant's Sixth Amendment right to counsel must also be suppressed as the "fruit of the police illegality." Id. at 1279-80. The court found as follows:

> [The undercover agents] therefore engaged in unconstitutional conduct in order to cement their relationship with Daniels, a relationship that led to the disclosures at issue here. We recognize that this case is somewhat atypical in that it was the fact of the unconstitutional violation, itself, rather than any uncounseled statements gleaned from [the defendant] that led to the later accumulation of the challenged evidence. We see no reason, however, why this circumstance should alter our analysis. Daniels' statements were "come at by exploitation of" the Government's misconduct. They were thus properly the subject of a suppression order.

Id. at 1279. Thus, the court held that all evidence obtained from both the defendant and Daniels had to be suppressed: "We hold only that when the Government chooses to violate a defendant's Sixth Amendment rights in order to advance its undercover objectives, it must be prepared to live with the consequences of that decision." Id. at 1280.

In the present case, the government's intended use of Mr. Schantz falls squarely within the mandates of Wong Sun, Nix, and Kimball. As noted in Section A above, the government clearly violated Mr. Keith's Sixth Amendment rights through its use of Mr. Gjerde to allegedly obtain statements from Mr. Keith. It was only through the prosecutor's unconstitutional use of Mr. Gjerde that the government obtained the purported evidence from Mr. Schantz. Thus, Mr. Shantz' proposed testimony should be excluded because it is the tainted fruit of the Sixth Amendment violation.

9

### III. Conclusion

Based on the foregoing, Mr. Keith respectfully requests that this Court exclude the testimony of Mr. Gjerde and reject the government's request to present Mr. Schantz as a witness, based on violations of Mr. Keith's Sixth Amendment right to counsel.

Respectfully submitted,

STEVEN R. NOLDER,
FEDERAL PUBLIC DEFENDER

*s/ Richard Smith-Monahan*
Richard Smith-Monahan (0065648)
First Assistant Federal Public Defender
Chiquita Center
250 E. 5th Street, Suite 350
Cincinnati, Ohio 45202
(513) 929-4834

Attorney for Defendant
Andrew Keith

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served upon Christy Muncy, Assistant United States Attorney, by Electronic Court Filing, this 3rd day of May, 2012.

*s/ Richard Smith-Monahan*
Richard Smith-Monahan